## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ERNEST WHITFIELD,

    Petitioner,

v.                                           CASE NO. 8:07-CV-1823-T-30MAP

WALTER A. MCNEIL,[1]

    Respondent.
_____/

## **ORDER**

    Petitioner, Ernest Whitfield (hereinafter "Petitioner"), petitions this Court for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (Dkt. 1). Respondent filed a Motion to Dismiss asserting, *inter alia*, that Petitioner's petition is time-barred (Dkt. 13).[2] Having reviewed the record, the parties' arguments, applicable statutes and controlling case law, and following an evidentiary hearing on the matter, for reasons set forth below, this Court agrees with Respondent that Petitioner's petition must be dismissed as time-barred.

### **Background and Procedural History**

    Petitioner was convicted of armed burglary, sexual battery with a deadly weapon, and first-degree murder, and he was sentenced to death for the first-degree murder charge (Dkt.

---

[1] Walter A. McNeil, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James McDonough, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Petitioner admits that his petition is untimely. However, he claims extraordinary circumstances exist that entitle him to equitable tolling of the limitation period.

15, Ex. A20). Petitioner appealed his convictions and sentences, and on September 11, 1997, the Florida Supreme Court affirmed Petitioner's convictions and sentences (Id.); *see Whitfield v. State*, 706 So. 2d 1 (Fla. 1997). Petitioner's motion for rehearing was denied on February 18, 1998 (Dkt. 15, Ex. A22). Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on October 5, 1998 (Dkt. 15, Ex. B3); *see Whitfield v. Florida*, 525 U.S. 840 (1998).

On November 9, 1998, Petitioner, through counsel, filed his "Motion to Vacate Judgement of Conviction and Sentence with Special Request for Leave to Amend" pursuant to Florida Rules of Criminal Procedure, Rule 3.850 (hereinafter "Rule 3.850 motion") (Dkt. 15, Ex. C1). In the Rule 3.850 motion, Petitioner's counsel admitted that the Rule 3.850 motion was "incomplete" and stated, in pertinent part, that the Rule 3.850 motion was filed "in order to toll the time in which to file [Petitioner's] Petition for Writ of Habeas Corpus in federal court if relief requested is later denied." (Id. at p. 2). Counsel also moved for leave to amend the Rule 3.850 motion once the government agencies complied with his requests for public records (Id. at p. 3). Counsel signed the Rule 3.850 motion, but Petitioner did not sign it, or verify the contents of the Rule 3.850 motion under oath (Id. at pp. 26-27).

On January 18, 2000, Petitioner, through assigned counsel, filed an amended Rule 3.850 motion in the circuit court (Id. at pp. 70-87). Petitioner signed the amended Rule 3.850 motion under oath (Id. at p. 87). On October 16, 2000, Petitioner, through counsel, filed a second amended Rule 3.850 motion (Id. at pp. 138-58). Petitioner signed the second

amended Rule 3.850 motion under oath (Id. at p. 164). On May 6, 2002, Petitioner, through newly appointed counsel, filed another amended Rule 3.850 motion (Dkt. 20 at p. 7).

On March 17, 2004, the circuit court denied Petitioner's amended Rule 3.850 motion (Dkt. 15, Ex. C16 at p. 3). On November 3, 2005, the Florida Supreme Court affirmed the denial of Petitioner's amended Rule 3.850 motion (Dkt. 15, Ex. C17); *see Whitfield v. State*, 923 So. 2d 375 (Fla. 2005). Petitioner's motion for rehearing was denied on February 17, 2006 (Dkt. 15, Ex. C19). The Florida Supreme Court's mandate issued on March 6, 2006 (Dkt. 15, Ex. C20).

Petitioner, through counsel, filed his federal habeas petition on October 5, 2007 (Dkt. 1).[3] On January 17, 2008, Respondent filed his motion to dismiss the petition (Dkt. 13). Petitioner filed his response to the motion to dismiss on April 1, 2008 (Dkt. 20). Respondent filed a reply to Petitioner's response on April 23, 2008 (Dkt. 22). On July 11, 2008, Petitioner filed an affidavit (Dkt. 25) in response to the Court's June 30, 2008 Order (Dkt. 24). On September 18, 2008, an evidentiary hearing was held before the Court on the issue of whether Petitioner was entitled to equitable tolling of the one-year limitation period (Dkt. 31).

---

[3]Petitioner's current counsel, Eric Pinkard, Esq., filed the federal habeas petition on Petitioner's behalf. Because Petitioner is seeking to vacate a death sentence, and financially unable to obtain adequate representation, he was entitled to appointment of counsel. 18 U.S.C. § 3599(a)(2). Accordingly, on November 20, 2007, the Court appointed Mr. Pinkard to represent Petitioner in these federal habeas proceedings (Dkt. 7).

## Timeliness of Petition

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") created a new limitations period for petitions for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of…the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review…." 28 U.S.C. §2244(d)(1)(A). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Petitioner's judgment became final on February 19, 1998, when the Florida Supreme Court denied his motion for rehearing. Petitioner, however, filed his petition for writ of certiorari in the United States Supreme Court which tolled the one-year limitation period until the petition was denied on October 5, 1998. Thirty-five (35) days of the limitation period expired when Petitioner filed his Rule 3.850 motion in the state circuit court on November 9, 1998.

Respondent argues that Petitioner's Rule 3.850 motion did not toll the limitation period because it was not properly filed as Petitioner did not sign it under oath. Petitioner admits that he did not sign the Rule 3.850 motion, or swear to its contents under oath.

4

Petitioner, however, argues that the Rule 3.850 motion was "properly filed" because Florida law, at the time Petitioner filed the Rule 3.850 motion, allowed petitioners to file incomplete Rule 3.850 motions prior to the production of public records, in order to preserve the petitioners' right to later file federal habeas petitions. Moreover, Petitioner argues that since the facts had not been developed because he had not yet received the public records he had requested, there was nothing for him to swear to in the Rule 3.850 motion. Finally, Petitioner argues that both the State and the circuit court treated the Rule 3.850 motion as "properly filed" because the State never moved to dismiss the Rule 3.850 motion on the ground that it lacked Petitioner's signed oath, and the circuit court never dismissed the Rule 3.850 motion because it did not include a sworn oath. Accordingly, the Court must determine whether Petitioner's original Rule 3.850 motion was "properly filed," as that phrase is understood in this context.

> "[A]n application is properly filed . . . as long as the application meets the 'conditions to filing.'" A petition is thus properly filed as long as it satisfies all the "mechanical rules that are enforceable by clerks . . . prescrib[ing], for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Pace v. DiGuglielmo*, 544 U.S. 408, 415, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *Artuz v. Bennett*, 531 U.S. 4, 5, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000); *see also Allen v. Siebert*, 128 S. Ct. 2, 4-5, 169 L. Ed. 2d 329 (2007).

*Brown v. Sec'y for the Dep't of Corr.*, 530 F.3d 1335 (11th Cir. 2008).

"Florida rules of criminal procedure require that a motion to vacate, set aside, or correct sentence be under oath. See Fla. R.Crim. P. 3.850." *Hurley v. Moore*, 233 F.3d 1295, 1298 (11th Cir. Fla. 2000). In *Hurley*, the Eleventh Circuit held that the petitioner's Rule

3.850 motion, *which was dismissed by the state court for failure to comply with the procedural requirement of a written oath*, was not a "properly filed" post-conviction motion. *Id.*, at 1298 (emphasis added). Petitioner argues that his case is distinguishable from *Hurley* because even though his original Rule 3.850 motion did not include an oath, the state court did not dismiss the Rule 3.850 motion for that reason. Also, Petitioner argues that the original Rule 3.850 motion, filed by his attorney merely to toll the limitation period for filing a federal habeas petition, did not require an oath because it did not contain any facts to which Petitioner could swear as true under oath.

Petitioner fails to cite to any law which supports his claim that the original Rule 3.850 motion was exempt from the requirement of a written oath. Regardless, because the state circuit court did not dismiss the original Rule 3.850 motion for failing to verify the motion under oath, and Petitioner amended his motion and corrected the problem, the amended Rule 3.850 (filed on January 18, 2000, and verified under oath) related back to the original filing. *Cf., Woods v. State*, 963 So. 2d 348, 349 (Fla. 4th DCA 2007)("Facially insufficient [Rule 3.850] motions should be denied without prejudice to refile a sufficient amended motion within an appropriate time period set forth in the order before dismissal or summary denial can be entertained."). *Cf. Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000) (second 28 U.S.C. § 2255 motion, substantially identical to the first that was insufficient for lack of a signature, should have been liberally construed as an amendment relating back to the initial filing). Accordingly, Petitioner is entitled to AEDPA tolling from November 9,

6

1998, when he originally filed the Rule 3.850 motion without an oath, and the limitation period remained tolled until the Florida Supreme Court's mandate issued on March 6, 2006. Therefore, the one-year AEDPA limitation period would expire on January 30, 2007, unless further tolling applied.[4]

Respondent next argues that even if the limitation period remained tolled until March 6, 2006, Petitioner's federal habeas petition is still untimely because he did not file it until October 5, 2007, and Petitioner has not demonstrated that he is entitled to equitable tolling of the limitation period. Petitioner essentially concedes that his federal habeas petition is untimely, but he argues that he is entitled to equitable tolling of the limitation period because of his attorneys' conduct.

Beyond statutory tolling, the limitation period under § 2254 may be equitably tolled where the "movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). Attorney mistake or negligence is not a basis for equitable tolling. *Pugh v. Smith*, 465 F.3d 1295 (11th Cir. 2006). Some forms of serious attorney misconduct, however, may entitle a petitioner to equitable tolling. *Downs v. McNeil*, 520 F.3d 1311 (11th Cir. 2008).

---

[4]Because 330 days of the one-year limitation remained when the clock resumed on March 6, 2006, Petitioner had until January 30, 2007, to file his federal habeas petition. The parties do not dispute the deadline.

7

**Evidentiary Hearing**

At the evidentiary hearing on September 18, 2008, Attorney Peter Cannon ("Cannon"), who at the relevant times was an attorney with Florida's Capital Collateral Regional Counsel ("CCRC")[5] which represented Petitioner, testified that he was assigned to Petitioner's case, and that he was responsible for preparing and filing Petitioner's federal habeas petition. He met with Petitioner on May 24, 2006, and August 16, 2006, and he discussed, *inter alia*, the federal habeas process with Petitioner, and provided Petitioner with a federal habeas "checklist." He prepared a rough draft of a federal habeas petition for Petitioner before October 11, 2006. However, because the relationship between Cannon and Petitioner had deteriorated, another attorney with CCRC, Daphney Branham ("Branham"),[6] took the rough draft of the petition to Petitioner on October 11, 2006.

Branham testified that she was never assigned to prepare or file the federal habeas petition on behalf of Petitioner, but she took the rough draft of the petition to Petitioner on October 11, 2006.[7] On that date she met with Petitioner, had him sign an affidavit of indigency in support of his motion for leave to proceed in the federal habeas action in forma pauperis, and she discussed the petition with Petitioner. She explained to Petitioner that the

---

[5] CCRC is "an entity created by the Florida Legislature to provide post-conviction representation to indigent death row inmates." *Downs*, 520 F.3d at 1313 (11th Cir. 2008)(citation and quotation omitted).

[6] At the relevant times, Daphney Branham was known as "Daphney Gaylord."

[7] Branham testified that the attorneys at CCRC are divided into teams, and that her team was to communicate with Petitioner, but another team, which included Cannon, was assigned to prepare and file the habeas petition.

8

petition she brought to him was a rough draft, and that other claims would have to be added to the petition before filing it. She did discuss the deadline for filing the petition with Petitioner. When she returned to her office at CCRC, she gave Cannon the draft of the petition and the signed affidavit of indigency. She next spoke with Petitioner on the telephone on October 30, 2006. At that time she informed Petitioner that the petition had not yet been filed, but that it would be timely filed. After October 30, 2006, Branham had no further communication with Petitioner.[8] Branham never informed Petitioner that his federal habeas petition had been filed.[9]

In the first week of February 2007, Branham spoke with Cannon regarding Petitioner's federal habeas petition, and Cannon informed her that "he would get to it." In March 2007, Branham realized that Petitioner's petition had not been filed and the limitation period had expired.

Cannon testified that after Branham returned the rough draft of the habeas petition to him in October 2006, he was busy handling two other "big" cases, and he never amended the habeas petition. At some point, Cannon realized the limitation period for filing Petitioner's habeas petition had expired. Therefore, at that point he did not amend the petition or file it because he believed Petitioner should get other counsel to represent him. Cannon had no

---

[8] Branham went to see Petitioner on January 9, 2007. However, because of issues with prison guards, Petitioner did not come out to see her that day.

[9] In his sworn affidavit, Petitioner claimed that on October 30, 2006, Branham told him that the habeas petition "had been filed." (Dkt. 25 at p. 1). However, at the beginning of the evidentiary hearing, counsel for Petitioner stated that Petitioner retracted that statement and admitted that Branham had not told him on October 30, 2006, that the habeas petition had been filed.

9

communications with Petitioner after August 2006. At no time did Cannon inform Petitioner that the habeas petition had been filed.

Attorney Carol Rodriguez ("Rodriguez"), another attorney with CCRC, testified that on April 30, 2007, her team merged with Cannon's team. On June 21, 2007, she met with Petitioner. At that time she did not know whether the habeas petition had been filed, or that the limitation period had expired. She testified that at that time Petitioner did not know whether the habeas petition had been filed. When she returned to her office at CCRC, she checked on the status of Petitioner's case and saw that nothing had been filed. She realized that the January 30, 2007 deadline had been missed. On July 3, 2007, she attended a meeting in which Cannon admitted that he had prepared the habeas petition but failed to file it. On July 12, 2007, she again met with Petitioner and informed him that the habeas petition had not been filed. She stated that Petitioner was angry that the habeas petition had not been filed. She never told Petitioner that the habeas petition had been filed.

Petitioner testified that in August 2006, he met with Cannon, and they discussed that the state proceedings had concluded, and that the federal habeas proceedings were to commence. Petitioner thought Cannon was incompetent and asked Cannon to get another attorney at CCRC to represent him. Petitioner states Cannon told him that "that was not going to happen."

Petitioner testified that he met with Branham on October 11, 2006. She gave him the habeas petition and the affidavit of indigency. She told him that the deadline for filing the

10

habeas petition was in February 2007. She also told him the habeas petition would be timely filed, and he believed that it would be timely filed.

Petitioner did not receive any communication from CCRC after October 2006 through February 2007. During that period of time, he wrote some letters to CCRC, but nobody ever responded to those letters. On January 19, 2007, Petitioner prepared a pro se Motion to Appoint Counsel to file with the United States District Court, Middle District of Florida, Tampa Division, in which he sought appointed counsel to prepare a federal habeas brief on his behalf. He prepared the Motion to Appoint Counsel because he believed Cannon was incompetent.

**Discussion**

The Court finds, reluctantly, that under the facts in this case, Petitioner is not entitled to equitable tolling of the one-year limitation period. On August 18, 2008, the Eleventh Circuit Court of Appeals decided *Holland v. State*, 2008 U.S. App. LEXIS 17552 (11th Cir. Aug. 18, 2008). In *Holland*, the Eleventh Circuit reiterated that "attorney negligence is not a basis for equitable tolling." *Id*. at *8. The Court noted, however, that "attorney misconduct going beyond 'mere negligence' may constitute an extraordinary circumstance warranting equitable tolling." *Id*. (quoting *Downs*, 520 F.3d 1311).

The *Holland* Court went on to say:

In *Downs*, we vacated a district court order dismissing a habeas petition as untimely based on counsel's alleged behavior that "ran the gamut from acts of mere negligence to acts of gross negligence to acts of outright willful deceit." Id. at 1323. Although we viewed counsel's behavior as a whole, it is material

11

>to the *Downs* decision that the alleged acts of attorney misconduct included affirmative misrepresentations by counsel about the filing of a state habeas petition: such a filing would have tolled the federal habeas limitations period. Id. at 1323-24. In *Downs*, we repeatedly and specifically noted counsel's lie: one that deprived the unknowing petitioner of as many as three months of his limitations period before it was discovered. Id.
>
>In contrast to *Downs*, Petitioner made in the district court no allegation of knowing or reckless factual misrepresentation or of lawyer dishonesty. Instead, Petitioner's allegations are limited to Collins's failure to communicate with Petitioner on the status of his case and to Collins's failure to file a federal habeas petition timely, despite repeated instructions to do so. We will assume that Collins's alleged conduct is negligent, even grossly negligent. But in our view, no allegation of lawyer negligence or of failure to meet a lawyer's standard of care--in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part--can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling. Pure professional negligence is not enough. This case is a pure--professional--negligence case. We decline to extend *Downs* to the different facts of this case.

*Holland*, at \*8-11.

Petitioner does not have a constitutional right to counsel in federal habeas corpus proceedings. *See, Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Petitioner does, however, have a statutory right to counsel. Fla. Stat., § 27.702; 18 U.S.C. § 3599 (creating a statutory right to qualified legal representation for capital defendants in federal habeas proceedings). Pursuant to Fla. Stat., § 27.702, the CCRC was appointed to represent Petitioner "for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person in the state courts, federal courts in this state, the United States Court of Appeals for the Eleventh Circuit, and

12

the United States Supreme Court." Fla. Stat. § 27.702(1). "[U]nder section 27.702, each defendant under sentence of death is entitled, as a statutory right, to *effective legal representation* by the capital collateral representative in all collateral relief proceedings." *Spalding v. Dugger*, 526 So. 2d 71, 72 (Fla. 1988)(emphasis added). The Court finds that counsels' conduct was grossly negligent and a breach of Petitioner's statutory right to effective legal representation.

A defendant who has been appointed an attorney statutorily charged to timely file a federal habeas petition should be allowed to reasonably assume that the duty will be effectively discharged. He should not have to expect to file the petition on his own. If the Court were writing on a clean slate, it would find that counsels' breach of the statutory duty would support equitable tolling of the one-year limitation period. But this Court is constrained by *Holland*, a case involving similar facts to the instant case, from doing so.

Like in *Holland*, the facts of this case reveal nothing more than counsels' failure to file a federal habeas petition timely, and failure to communicate with Petitioner on the status of his case. Unlike the petitioner in *Downs*, Petitioner does not show any proof of "bad faith, dishonesty, divided loyalty, mental impairment or so forth" on the part of his attorneys. Although he had been told on at least one occasion that his federal habeas petition "would be timely filed," Petitioner's attorneys never misrepresented to him that the federal habeas petition had been filed. Pursuant to *Holland*, Petitioner's attorneys' gross negligence and failure to meet their standard of care, in the absence of bad faith, dishonesty, divided loyalty,

13

etc., does not "rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling." *Id.* at *10.

**Actual Innocence**

Petitioner asserts that "he is actually innocent of the crime of First Degree Murder, as well as actually innocent of the death penalty. This petition should also be deemed timely for that reason." (Dkt. 1 at p. 48).

Petitioner's "actual innocence" claim fails. First, the Eleventh Circuit Court of Appeals has never held that there is an "actual innocence" exception to the AEDPA's one-year statute of limitations. *See Taylor v. Secretary, Dept. of Corrections*, 230 Fed. Appx. 944 (11th Cir. 2007)("[W]e have never held that there is an 'actual innocence' exception to the AEDPA's one-year statute of limitations, and we decline to do so in the instant case because Taylor has failed to make a substantial showing of actual innocence.")(unpublished opinion).

Second, Petitioner has failed to make a substantial showing of actual innocence. To receive relief based on a fundamental miscarriage of justice, a petitioner must make a substantial showing of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). "To establish actual innocence, [a habeas petitioner] must demonstrate that … 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.*, 513 U.S. at 327-328. 'Actual innocence' refers to factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "A substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare…. To be credible, such a claim

requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.

In *Sibley v. Culliver*, 377 F.3d 1196 (11th Cir. 2004), the Eleventh Circuit explained:

> There are two different ways in which a person sentenced to death might be able to show "actual innocence." First, he might attempt to prove his innocence of the underlying capital offense itself. In *Schlup v. Delo*, 513 U.S. 298, 317, 115 S. Ct. 851, 862, 130 L. Ed. 2d 808 (1995), the Supreme Court held that a prisoner attempting to make such a showing must raise "new facts" that cast "sufficient doubt upon [his] guilt to undermine confidence in the result of a trial without the assurance that the trial was untainted by constitutional error." In practical terms, this means that the petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327, 115 S. Ct. at 867 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397).
>
> Either in addition, or as an alternative, to this a petitioner may attempt to demonstrate that, whether or not he is guilty of the capital offense, he is "innocent" of the death penalty because none of the aggravating factors legally necessary for invocation of the death penalty applied. The Supreme Court has emphasized that, in making this determination, a court may not look to new evidence concerning mitigating factors; once it has satisfied itself that the minimum state law requirements concerning the presence of aggravating factors have been satisfied, its review is complete. *Sawyer v. Whitley*, 505 U.S. 333, 347, 112 S. Ct. 2514, 2524, 120 L. Ed. 2d 269 (1992) ("The 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error."). To make this showing, a petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Id.*, 505 U.S. at 336, 112 S. Ct. at 2517. Thus, a petitioner challenging his underlying conviction faces a lower burden of proof than a petitioner challenging the

existence of aggravating circumstances rendering him death-eligible. *Sibley*, 377 F.3d at 1205-06.

Petitioner has failed to present any new reliable evidence or allege any facts which would support a claim of actual innocence.

Accordingly, the Court **ORDERS** that:

1. Respondent's motion to dismiss (Dkt. 13) is **GRANTED**.

2. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DISMISSED** as time-barred.

3. The Clerk of the Court is directed to enter judgment in favor of Respondent and against the Petitioner, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on September 24, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copies to:
Counsel of Record

16