# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ERNEST WHITFIELD,

    Petitioner,

v.                                          CASE NO. 8:07-CV-1823-T-30MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

This cause is before the Court, pursuant to the limited remand of the Eleventh Circuit Court of Appeals, for fact finding and further proceedings consistent with the United States Supreme Court's opinion in *Holland v. Florida*, 130 S. Ct. 2549 (2010)[1] (Dkt. 49).[2]

## Background

Whitfield, a state prisoner under sentence of death, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Respondent filed a motion to dismiss the petition as untimely (Dkt. 13).[3] Petitioner filed a response to the motion to dismiss in which

---

[1] *Holland* expressly rejected the Eleventh Circuit's rule that attorney negligence is never a basis for equitable tolling. Subsequent to the Supreme Court's decision in *Holland*, "[t]he proper analysis is to determine whether the facts show garden variety attorney negligence or serious attorney misconduct." *Poveromo v. Fla. Dep't of Corr.*, 447 Fed. Appx. 945, 947 (11th Cir. 2011) (unpublished opinion).

[2] After reviewing the parties pleadings and the record, the Court concludes that no further evidentiary proceedings are required on the issue of equitable tolling. *See Schriro v. Landrigan*, 550 U.S. 465, 474-475 (2007).

[3] In the alternative, Respondent moved to dismiss Grounds IV and V of the petition as procedurally barred (Id. at p. 15).

he asserted that his petition was not time-barred because: 1) he was entitled to equitable tolling of the limitation period due to his attorneys' conduct and failure to timely file his federal habeas petition; and 2) he was actually innocent of first degree murder and the death penalty (Dkt. 20). Respondent filed a reply (Dkt. 22).

Following an evidentiary hearing, this Court granted Respondent's motion to dismiss, dismissed the petition as time-barred, and closed this case (Dkt. 33). Both this Court and the Eleventh Circuit Court of Appeals denied Petitioner a certificate of appealability (Dkts. 40, 48).

Petitioner, however, filed a petition for writ of certiorari in the United States Supreme Court. The Supreme Court granted the writ, and remanded the case to the Eleventh Circuit for further consideration in light of the Supreme Court's decision in *Holland*.[4] *See Whitfield v. McNeil*, 130 S. Ct. 3451 (2010). Thereafter, the Eleventh Circuit remanded the case to this Court for further proceedings consistent with the Supreme Court's opinion in *Holland*. *Whitfield v. Sec'y, Dep't of Corrections*, 613 F. 3d 1318 (11th Cir. 2010).

This Court reopened the case, directed Petitioner to show cause whether sufficient facts exist that would entitle him to equitable tolling of the limitation period, and directed Respondent to file a reply to Petitioner's response (Dkt. 52). Petitioner filed a response to the Court's order in which he asserted that he was entitled to equitable tolling (Dkt. 54).

---

[4]After this Court dismissed Petitioner's petition as time-barred on September 24, 2008, on the basis of the Eleventh Circuit's then controlling opinion in *Holland v. Florida*, 539 F.3d 1334, 1339 (11th Cir. 2008), the Supreme Court issued its opinion in *Holland* on June 14, 2010.

Respondent filed a reply arguing that Petitioner is not entitled to equitable tolling, and the Court should dismiss the petition as time-barred (Dkt. 55).

## Discussion

This Court previously concluded that after Petitioner's state post-conviction proceedings concluded on March 6, 2006, Petitioner had until January 30, 2007, to timely file his federal habeas petition (see Dkt. 33). Petitioner's federal habeas petition was not filed until October 5, 2007 (Dkt. 1).

"[T]he timeliness provision in the federal habeas corpus statute is subject to equitable tolling." *Holland*, 130 S. Ct. at 2554. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 130 S. Ct. at 2566 (internal quotations and citations omitted).

The Court conducted an evidentiary hearing on September 18, 2008, on the issue of whether Petitioner was entitled to equitable tolling of the federal limitations period as a result of his Capitol Collateral Regional Counsel's ("CCRC") conduct. During the evidentiary hearing, CCRC attorney Peter Cannon ("Cannon") testified that he was assigned to Petitioner's case, and that he was responsible for preparing and filing Petitioner's federal habeas petition. When he met with Petitioner on May 24, 2006, and August 16, 2006, he

discussed, *inter alia*, the federal habeas process with Petitioner, and provided Petitioner with a federal habeas "checklist." He prepared a rough draft of a federal habeas petition for Petitioner before October 11, 2006. However, because the relationship between Cannon and Petitioner had deteriorated, another attorney with CCRC, Daphney Branham ("Branham"), took the rough draft of the petition to Petitioner on October 11, 2006.

Branham testified that she was never assigned to prepare or file the federal habeas petition on behalf of Petitioner, but she took the rough draft of the petition to Petitioner on October 11, 2006.[5] On that date she met with Petitioner, had him sign an affidavit of indigency in support of his motion for leave to proceed in the federal habeas action *in forma pauperis*, and she discussed the petition with Petitioner. She explained to Petitioner that the petition she brought to him was a rough draft, and that other claims would have to be added to the petition before filing it. She did discuss the deadline for filing the petition with Petitioner. She did not tell Petitioner that the petition would be returned to Cannon for filing. When she returned to her office at CCRC, she gave Cannon the draft of the petition and the signed affidavit of indigency. She next spoke with Petitioner on the telephone on October 30, 2006. At that time she informed Petitioner that the petition had not yet been filed, but that it would be timely filed.

---

[5]Branham testified that the attorneys at CCRC are divided into teams, and that her team was to communicate with Petitioner, but another team, which included Cannon, was assigned to prepare and file the habeas petition.

4

In the first week of February 2007, Branham spoke with Cannon regarding Petitioner's federal habeas petition, and Cannon informed her that "he would get to it." In March 2007, Branham realized that Petitioner's petition had not been filed and the limitations period had expired.

Cannon testified that after Branham returned the rough draft of the habeas petition to him in October 2006, he was busy handling two other "big" cases, and he never amended the habeas petition. At some point, Cannon realized the limitations period for filing Petitioner's habeas petition had expired. Therefore, he did not amend the petition or file it because he believed Petitioner should get other counsel to represent him. Cannon had no communications with Petitioner after August 2006.

Petitioner testified that in August 2006, he met with Cannon, and they discussed that the state proceedings had concluded, and that the federal habeas proceedings were to commence. Petitioner thought Cannon was incompetent and asked Cannon to get another attorney at CCRC to represent him. Petitioner states Cannon told him "that was not going to happen."

Petitioner testified that he met with Branham on October 11, 2006. She showed him the habeas petition and had him sign the affidavit of indigency. She told him that the petition was not "complete," but that the deadline for filing the habeas petition was in early February 2007. She also told him that Mark Gruber was the lead attorney on the case. Petitioner

5

believed that the habeas petition would be timely filed because Branham told him that the habeas petition would be timely filed.

Between October 2006 and February 2007, Petitioner wrote some letters to CCRC.[6] On January 19, 2007, Petitioner prepared a *pro se* "Motion to Appoint Counsel" to file with the United States District Court, Middle District of Florida, Tampa Division, in which he asserted that his "current counsel of record has no experience and knowledge preparing an adequate, proper [habeas petition]," and requested appointed counsel to prepare a federal habeas petition on his behalf (See attachment "B").[7] CCRC received a copy of that motion on January 22, 2007 (Id.). During the evidentiary hearing, CCRC attorney Carol Rodriguez testified in pertinent part that when she met with Petitioner in June 2007, Petitioner told her that he had inquired about the status of his petition in April 2007, but still did not know the status of his case.

*Holland* states that "equitable relief is flexible and all the facts and circumstances must be considered[.]" *Hutchinson v. Florida*, 2012 U.S. App. LEXIS 7960, *6 (11th Cir. Apr. 19, 2012) (unpublished) (citing *Holland*, 130 S.Ct. at 2563). The Court in *Holland* made clear that "exercise of a court's equity powers . . . must be made on a case-by-case basis." *Holland*, 130 S.Ct. at 2563 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)).

---

[6]On December 26, 2006, for example, Petitioner wrote a letter to "Mr. Gruber" at CCRC in which Petitioner stated that he had yet to meet or speak with Gruber, and alerted Gruber that his federal habeas petition was "due to be filed early February. . . ." (See Attachment "A").

[7]On April 10, 2006, Petitioner also prepared a "Motion to Dismiss Counsel," to file in the state court, in which he moved to dismiss Cannon as his counsel (See attachment "C"). In the motion, Petitioner asserted that Cannon failed to communicate with him and keep appointments, and that CCRC was "sabotaging his case." (Id.).

The Court concludes that under the circumstances in this case, Petitioner demonstrates that his counsels' misconduct meets *Holland*'s requirement for equitable tolling.

Pursuant to Fla. Stat., § 27.702, the CCRC was appointed to represent Petitioner "for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person in the state courts, *federal courts in this state*, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court." Fla. Stat. § 27.702(1) (emphasis added). "[U]nder section 27.702, each defendant under sentence of death is entitled, as a statutory right, to *effective legal representation* by the capital collateral representative in all collateral relief proceedings." *Spalding v. Dugger*, 526 So. 2d 71, 72 (Fla. 1988) (emphasis added).

The Court finds that CCRC counsels' representation was far from effective, and amounts to an extraordinary circumstance that prevented Petitioner from timely filing his federal habeas petition. Cannon was the CCRC attorney assigned to prepare and file Petitioner's federal habeas petition. Cannon was assigned these tasks despite the fact that Petitioner made CCRC aware that he was dissatisfied with Cannon's representation and wanted him removed from his case (See attachment "C"). When Cannon met with Petitioner in August 2006, Petitioner again told Cannon that he was dissatisfied with him and wanted another attorney assigned to his case.

Presumably in response to the deteriorating relationship between Cannon and Petitioner, CCRC assigned Branham to the case. Her duties, however, were apparently

limited to communicating with Petitioner regarding the case. Unbeknownst to Petitioner, Cannon retained the responsibility of preparing and filing the federal habeas petition.

Branham[8] wrote a letter to Petitioner on September 12, 2006, in which she stated in pertinent part that she had been "reassigned to [Petitioner's] case and will be working with [Petitioner] in preparation for your federal pleadings." (See attachment "D"). Cannon drafted a petition on behalf of Petitioner sometime before October 11, 2006. However, the petition did not identify Cannon as Petitioner's counsel (See attachment "E"). Rather, the petition identified Mark Gruber and Branham as counsel for Petitioner (Id.). Then, on October 11, 2006, Branham met with Petitioner and showed him a copy of the petition, had him sign an affidavit of indigency, and told Petitioner that the petition would be timely filed (Dkt. 20-2 at 2). She also told Petitioner that the deadline for filing the petition was in February 2007.

Therefore, although there is no indication that Petitioner was told either that Cannon would or would not continue to work on his case, Petitioner was clearly given the impression that Gruber and Branham were now handling his case and would ensure that the petition was timely filed.[9] Petitioner's December 26, 2006 letter to Gruber clearly shows that pursuant to his conversation with Branham in October 2006, Petitioner believed Gruber was his "new lead attorney regarding [his] case." (See attachment "A") (emphasis in original). Branham's

---

[8]At that time, Branham's name was Gaylord.

[9]In fact, Rodriguez testified during the evidentiary hearing that when she first met with Petitioner in June 2007, Petitioner told her that he did not realize Cannon was still involved with his case, and that Branham and Gruber, not Cannon, were his attorneys.

8

January 3, 2007 letter in response to Petitioner's letter did not dispute that Gruber was the "new lead attorney" handling Petitioner's case.  Rather, the letter fostered Petitioner's impression that Gruber and Branham were handling his case because it indicated that Branham and Gruber "had planned to visit with all clients [in] December," Gruber was injured but working on cases from home, and Branham was uncertain when Gruber would visit with Petitioner in January (Id.).

Despite giving Petitioner the impression that she and Gruber were handling his case, Branham testified during the evidentiary hearing that she was never assigned to prepare or file the federal habeas petition on behalf of Petitioner.  Instead, after meeting with Petitioner on October 11, 2006, Branham returned to her office and gave the petition and affidavit of indigency to Cannon for filing (Dkt. 20-2 at 2).  Cannon, however, did not file the petition, and had no communication at all with Petitioner after August 2006.  In February 2007, after the limitations period expired on January 30, 2007, Branham spoke with Cannon regarding Petitioner's federal habeas petition, and Cannon informed her that "he would get to it."

"[A] lawyer's conduct that constitutes abandonment of his death row inmate client will...provide the necessary basis for equitable tolling of the federal habeas filing deadline." *Hutchinson v. Florida*, 2012 U.S. App. LEXIS 7960, *49 (11th Cir. Apr. 19, 2012) (unpublished) (Barkett, J., concurring) (citing *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012) ("a client cannot be charged with the acts or omissions of an attorney who has abandoned him")).  Cannon abandoned Petitioner because despite the fact that he remained the attorney

assigned the duty of preparing and filing the petition on behalf of Petitioner, he did not communicate with Petitioner at all after August 2006, and never filed the federal habeas petition. Further, after October 11, 2006, Petitioner justifiably believed that Cannon no longer was representing him, and that Branham and Gruber were now handling his case and would ensure that the federal habeas petition would be timely filed. Therefore, in Petitioner's mind, the concerns he had regarding the representation he was receiving from CCRC were no longer an issue at that time. "[A] client [cannot] be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Maples*, 132 S. Ct. at 924.[10]

The Court also concludes that Petitioner exercised reasonable diligence. Petitioner has the burden of presenting "evidence showing reasonable efforts to timely file his action." *Dodd v. United States*, 365 F.3d 1273, 1277 (11th Cir. 2004) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286-89 (11th Cir. 2002)). Petitioner, however, need only show "an appropriate degree of diligence for someone in his situation." *Dodd*, 365 F.3d at 1283.

In April 2006, Petitioner made it clear to CCRC that he was concerned and dissatisfied with Cannon's representation by providing CCRC with a copy of his "Motion to Dismiss Counsel" in which he alleged that Cannon failed to communicate with him and keep him informed of the status of his post-conviction proceedings. After Branham visited with

---

[10]In sum, this case involves more than "a garden variety claim of excusable neglect." *See Holland*, 130 S.Ct, at 2564 ("a garden variety claim of excusable neglect such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling") (citation omitted).

Petitioner on October 11, 2006, and informed Petitioner that she and Gruber were assigned to his case, the filing deadline was in February 2007, and the petition would be timely filed, Petitioner wrote a letter to Gruber on December 26, 2006, in which he indicated that he had not seen or heard from Gruber, and that the filing deadline for the habeas petition was "early February." In response, Branham sent Petitioner the letter dated January 3, 2007, which indicated in pertinent part that Gruber was working on cases at home, Gruber would be meeting with Petitioner sometime in January, and Branham was planning to visit the prison within two weeks.[11] On January 19, 2007, shortly before expiration of the federal limitations period, Petitioner prepared his "Motion to Appoint Counsel" which CCRC received on January 22, 2007. On February 11, 2007, Petitioner wrote a letter to Branham in which he indicated in pertinent part that he thought Branham was "suppose [sic] to contact [him] before filing [his] federal habeas corpus brief this month." (See Attachment "I"). Therefore, similar to the facts in *Holland*, Petitioner's attorneys "failed to file Petitioner's federal petition on time despite Petitioner's many letters that repeatedly emphasized the importance of [them] doing so."

Respondent argues that Petitioner did not exercise diligence because he failed to file a petition on his own behalf after July 12, 2007, when he met with and was informed by Rodriguez that the habeas petition had not been filed (Dkt. 55 at 6). This Court has already stated that "[a] defendant who has been appointed an attorney statutorily charged to timely

---

[11]Branham went to the prison on January 9, 2007 (See attachment "F"). Petitioner, however, did not meet with her because of an altercation he had with a prison guard (Id.).

11

file a federal habeas petition should be allowed to reasonably assume that the duty will be effectively discharged. He should not have to expect to file the petition on his own." (Dkt. 33 at 13).

Moreover, Rodriguez's July 17, 2007 memo to Bill Jennings and Cannon indicates that when she met with Petitioner on July 12, 2007, she told Petitioner that Jennings "had authorized [her] to communicate to [Petitioner] that another counsel would represent [Petitioner] (either CCRC/South or Registry)." (See attachment "G"). Further, Rodriguez's July 19, 2007 memo to Jennings indicates that attorney Eric Pinkard had agreed to represent Petitioner, and would make arrangements to meet with Petitioner as soon as possible. (See attachment "H"). It appears from Union Correctional Institution records that Attorney Pinkard met with Petitioner no later than August 7, 2007 (Dkt. 20-4 at 25). Thereafter, Attorney Pinkard filed the instant federal habeas petition on October 5, 2007 (Dkt. 1). Petitioner should not have been expected to file his own petition when CCRC counsel informed him that new counsel would be assigned to him, and new counsel was actually assigned to him soon thereafter.

Under the facts of this case, Petitioner shows the "reasonable diligence" and "extraordinary circumstances" that *Holland* requires. 130 S. Ct. at 2566. Therefore, the Court will grant equitable tolling between October 11, 2006, the date Branham met with Petitioner and assured him that the petition would be timely filed, and October 5, 2007, the

date Attorney Pinkard filed the petition on behalf of Petitioner. Consequently, Petitioner's petition is timely. Thus, Respondent's motion to dismiss (Dkt. 13) will be denied.

Accordingly, the Court **ORDERS** that:

1. This Court's September 24, 2008 order granting Respondent's motion to dismiss on the ground that the petition was time-barred (Dkt. 33), and the Clerk's judgment entered on September 25, 2008 (Dkt. 35), are **VACATED**.

2. Respondent's motion to dismiss (Dkt. 13) is **DENIED** without prejudice to Respondent reasserting in the response to the petition that Grounds IV and V of the petition are procedurally barred.

3. Respondent shall respond to the petition within SIXTY (60) DAYS from the date of this Order.

4. Petitioner has THIRTY (30) DAYS from the date the response is filed with the Court to file a reply.

**DONE** and **ORDERED** in Tampa, Florida on May 31, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copies to:
Counsel/Parties of Record

Attachments (23 pages)